IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Number: 4:18-CR-00011 |
| | : | |
| MARCUS JAY DAVIS | : | |
| *Et al.* | : | |

**UNITED STATES' MOTION
FOR AN ANONYMOUS JURY**

The United States of America, by its undersigned counsel, hereby moves this Court to empanel an anonymous jury in the trial of the above-captioned case for the reasons stated below.

**I. NATURE OF THE CASE**

From sometime in 2015 through the date of the First Superseding Indictment, members of the Rollin 60s Crips were involved in a number of violent crimes throughout the Danville, Virginia area. First Superseding Indictment, ECF No. 207. These acts included murder, attempted murder, assaults with deadly weapons, the trafficking in narcotics, and related firearm offenses. *Id.*

Specifically, and as more fully set forth in the First Superseding Indictment, the United States alleges that in the summer of 2016, members of the Milla Bloods street gang and the Rollin 60s Crips street gang "tied the flag"[1] in order to facilitate their criminal activities in the Danville, Virginia area. Such concerted action included the attempted murders of the "Philly Boys" at North Hills Court on June 15, 2016, and the later attempted murder of Justion Wilson

---
[1] "Tied the flag" is a gang expression for uniting or conspiring together.

1

and murder of Christopher Motley at North Hills Court on August 20, 2016, as well as the attempted murder of Tyliek Conway four days later. The "tying of the flags" was also discussed at a meeting on the day of or in the days immediately before the Motley murder, at the residence of the "Big Homie" for the Rollin 60s Crips.   Since that time, members of the gang were involved in obstructing justice by intimidating and threatening witnesses.

On June 11, 2018, a federal Grand Jury indicted members of the Rollin 60s Crips street gang, the Milla Bloods street gang, and gang associates on violations of Title 18, United States Code, Section 1962 (Racketeer Influenced and Corrupt Organizations Act); Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering), and a variety of other charges, including obstruction-related offenses. These cases are captioned *United States v. Davis*, 4:18-cr-11, and *United States v. Anthony et al.*, 4:18-cr-12. The Grand Jury returned a First Superseding Indictment in *United States v. Davis et al*, 4:18-cr-11, on November 6, 2018.

On November 6, 2018, co-conspirator A pled guilty to his involvement in the RICO conspiracy. In his stipulated Statement of Facts he admitted, *inter alia,* that (1) he was a member of the criminal organization, the Rollin 60s Crips (Rollin 60s), which is a street gang; (2) the Rollin 60s was engaged in a variety of violent crimes in the Western District of Virginia, including, but not limited to murder and attempted murder, assault resulting in bodily injury, assault with a dangerous weapon, robbery, obstruction of justice, drug distribution and trafficking, and the conspiracy to commit these crimes; (3) the purpose of the gang was to promote, enhance and enrich its members through, among other things, acts of violence including murder, robbery, trafficking in controlled substances, and the thwarting of law enforcement to apprehend members of the gang; (4) he was personally involved the murder of Christopher

2

Motley and attempted murder of Justion Wilson on August 20, 2016; and (5) he was personally involved in the conspiracy to distribute, and did in fact distribute, marijuana on behalf the racketeering enterprise. *U.S. v. Marcus Davis, et al.*, ECF No. 228.

On December 7, 2018, co-conspirator B pled guilty to his involvement in the RICO conspiracy. Co-conspirator B stipulated to the facts noted in (1) – (5) above. Further, he admitted that he was personally present for a meeting on or about August 19, 2016, at the home of Marcus Davis, the leader of the Rollin 60s, during which members of the Rollin 60s and Milla Bloods discussed that members of both the Rollin 60s and the Millas had the authority to shoot and kill members of a rival Bloods set, the Billys. *See* Case No. 4:18CR36, ECF No. 7.

On March 11, 2019, co-conspirator C pled guilty to his involvement in the RICO conspiracy. Co-conspirator C stipulated to the facts noted in (1) – (3) above. Further, he admitted that he was personally present for the attempted murder of Dwight Harris and Armonti Womack on June 15, 2016, during which he pointed and fired his rifle at the targets until his 30-round clip was empty. Finally, co-conspirator C admitted that he was personally involved in the conspiracy to distribute, and did in fact distribute, marijuana on behalf the racketeering enterprise. *U.S. v. Marcus Davis, et al.*, ECF No. 371.

On March 26, 2019, co-conspirator D pled guilty to his involvement in the RICO conspiracy. Co-conspirator D stipulated to the facts noted in (1) – (4) above. Further, he admitted that he was personally present for the attempted murder of Justion Wilson and the murder of Christopher Motley on August 20, 2016. Co-conspirator D admitted that in the days after August 20, 2016 murder, he was a passenger in a vehicle occupied by other Rollin 60s who attempted to murder a member of the rival Billys Bloods at the direction of gang leader, Marcus Davis.

Finally, Co-conspirator D admitted that he was personally involved in the conspiracy to distribute, and did in fact distribute, marijuana on behalf the racketeering enterprise. *U.S. v. Marcus Davis, et al.*, ECF No. 380.[2]

This case is currently set for trial on October 7, 2019.

## II. STANDARD FOR EMPANELING AN ANONYMOUS JURY

A district court may empanel an anonymous jury in any non-capital case in which "the interests of justice so require." *United States v. Dinkins,* 691 F.3d 358, 372 (4th Cir. 2012) (quoting 28 U.S.C. § 1863(b)(7) and *citing United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005)). In a capital case, however, the district court may empanel an anonymous jury only after determining "by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." *Id.* at 372, citing 18 U.S.C. § 3432.[3] The term "anonymous jury" does not have one fixed meaning. *Id.* at 371. A jury generally is considered to be "anonymous" when a trial court has withheld certain biographical information about the jurors either from the public, or the parties, or both. *Id.*

An anonymous jury is warranted in the rare circumstance when "(1) there is a strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised absent anonymity; and (2) reasonable safeguards have been adopted to minimize the risk that the rights of the accused will be infringed." *Dinkins,* 691

---

2    In addition to these individuals, co-conspirators in the related case, *U.S. v. Anthony et al.*, case no. 4:18-cr-12, have also pled guilty and acknowledged participation in some of these same events on behalf of their gang, the Milla Bloods.

3    Although this case was originally charged as a capital crime, the United States is not seeking the death penalty. As noted in the unpublished decision in *United States v. Hall*, 506 Fed. Appx. 245 (4th Cir. 2013), the Fourth Circuit has not addressed the issue of whether a case loses its capital nature for 18 U.S.C. § 3432 purposes if the United States does not seek the death penalty. Accordingly, the United States asks the court to consider this motion for an anonymous jury employing the higher standard applicable to capital cases.

4

F.3d at 372. In *Dinkins*, the Fourth Circuit identified five factors, hailing from *United States v. Ross*, 33 F.3d 1507, 1520 (11th Cir. 1994), and often referred to as the *Ross* factors, for determining when an anonymous jury is appropriate:

> (1) Defendant's involvement in organized crime; (2) defendant's participation in a group with capacity to harm jurors; (3) defendant's past attempts to interfere with the judicial process; (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

*Dinkins*, 691 F.3d at 373. Those five factors are neither exhaustive nor dispositive, and the Court must look at the totality of the circumstances. *Id.* The absence of any one factor does not mean that the Court should not empanel an anonymous jury. *United States v. Hager*, 721 F.3d 167, 187 (4th Cir. 2013). Moreover, the Court does not have to find proof of impending harm to jurors. Rather, the Court only must find reason to believe that jury protection is necessary. *See, e.g., Hager*, 721 F. 3d at 187 (holding defendant's ten-year old conviction for obstruction of justice, and the fact that he was charged with a capital crime, is sufficient alone to justify an anonymous jury); *Untied States v. Hall*, 506 F.App'x 245 (4th Cir. 2013) (unpublished) (upholding an anonymous jury based on defendant being an organized drug trafficker and defendant's previous attempt to interfere with the judicial process); *United States v. Edmond*, 52 F.3d 1080 (C.A.D.C. Cir. 1995) (history of jury tampering sufficient, but not necessary, to ascertain a threat to jurors from the charges in the indictment); *United States v. Riggio*, 70 F.3d 336 (5th Cir. 1995) (decision to empanel anonymous jury, based on defendant's organized crime connections and previous involvement in jury fraud, was not abuse of discretion).

### A. Additional Statutory Consideration in Capital Cases

In capital cases, there is an additional statutory consideration. Federal statute provides that a defendant charged with a capital offense must be provided a list of potential jurors and witnesses three days before trial, "except that such list of the veniremen and witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." 18 U.S.C. § 3432. When a court is exploring whether the life or safety of any person may be jeopardized, it may consider and be informed by the allegations in the indictment, but because the indictment is not evidence, the court may not rely solely on the indictment to support its decision to empanel an anonymous jury under Section 3432. *Dinkins* at 691 F.3d at 373-74; *United States v. Udeozor*, 515 F.3d 260, 272 (4th Cir. 2008). The court may review the entire record, including the indictment and testimony from prior evidentiary hearings, in determining whether an anonymous jury is necessary "to protect the life and safety of any person." *See* 18 U.S.C. § 3432; *see also United States v. Edlin*, 128 F. Supp. 2d 23, 43-44 (D.D.C. 2001) (relying upon indictment and government proffers in reaching decision on the need for jury anonymity). Moreover, as the Fourth Circuit observed in *Dinkins*, "the *Ross* factors are relevant to cases involving capital, as well as non-capital, offenses to the extent that those factors shed light on the issue [of] whether an anonymous jury is required to protect 'the life or safety of any person.'" 691 F.3d at 373.

Neither 18 U.S.C. § 3432 nor any other statute requires that a district court conduct an evidentiary hearing before deciding to empanel an anonymous jury, provided that the court's decision is supported by compelling evidence of record. *See id. citing United States v. Eufrasio*, 935 F.2d 553, 574 (3d Cir. 1991). Nevertheless, it is advisable for a district court deciding to

6

empanel an anonymous jury to support its conclusion with express findings based on evidence of record, because a court's failure to state a basis for its decision sufficient to permit appellate review may constitute an abuse of discretion. *See id. citing United States v. Morales*, 655 F.3d 608, 621 (7th Cir. 2011).

  **B. Non-Prejudicial Explanation to Jury Regarding Anonymity**

  In order to comply with the standard set in *Dinkins*, the Court can take several steps to "minimize the risk" an anonymous jury would have on the rights of the defendants. The Court may inform the jury that the use of an anonymous jury is simply one of a number of procedures used in federal court "to protect [them] from contact in the media or other persons, curiosity seekers and the like, to protect [them] from unwanted publicity and to insure that no outsider information [was] communicated to [them] through the[e] process and the trial." *Hager*, 721 F.3d at 188. This explanation was given by Judge Ellis of the Eastern District of Virginia and approved by the Fourth Circuit. *Id.*

  Here, the United States urges the Court, in accordance with *Dinkins* and *Hager*, to instruct the jury that the trial is expected to engender significant media coverage, and therefore the juror's anonymity is designed to protect their privacy and the privacy of their families from the possibility of media interest in them and potential attempts by the media to contact them.

**III. <u>AN APPLICATION OF THE *ROSS* FACTORS WARRANTS THE EMPANELING OF AN ANONYMOUS JURY</u>**

  As established above, courts faced with a request for an anonymous jury regularly inform their decisions by resorting to the *Ross* factors, albeit recognizing that the existence of any single factor or combination of factors does not automatically compel the empaneling of an anonymous jury.

7

As will be demonstrated below, under the facts of this case, each of the five *Ross* factors is satisfied, which, in turn, weighs heavily in favor of empaneling an anonymous jury in this case.

### A. The defendants' involvement in organized crime.

The United States' evidence will establish that the defendants were involved in a RICO enterprise known as the Rollin 60s Crips criminal street gang. As more fully set forth in the First Superseding Indictment, and detailed in the Statement of Facts of several co-conspirators who have entered guilty pleas, the defendants were, at all times relevant, members of a set of the Rollin 60s criminal street gang and, together with their co-conspirators, terrorized the Danville, Virginia area through organized activity of assaults, robberies, murder, obstruction of justice, and other criminal conduct. ECF Nos. 207, 228, 371, 382 and Case No. 4:18cr36, ECF No. 7. Specifically, the gang was responsible for, *inter alia*, the attempted murder of at least four individuals and the murder of another.

As a result, the first *Ross* factor weighs heavily in favor of empaneling an anonymous jury.

### B. The defendants' participation in a group with the capacity to harm jurors.

The evidence establishes that the Rollin 60s is a violent gang. The Rollin 60s is a set of the larger Crips criminal street gang. Crips gang members traditionally join together to enrich themselves by committing various crimes, including acts involving murder. First Superseding Indictment, ECF No. 207. Traditionally, the Crips street gang will commit acts of violence against individuals they perceive to be rivals of the organization, including rival gang members, economic competitors, and people they believe to have cooperated with law enforcement. *Id.* Moreover, as the Court is aware, in this increasingly advanced internet and digital world, it is

8

exceedingly easy for motivated persons to identify and locate the residences of family members of almost anyone in the United States, to include jurors. As a result, members of the Rollin 60, as well as the Crips organization as a whole, must be seen as a potential threat to the sanctity of these proceedings.

Therefore, the second *Ross* factor also weighs strongly in favor of empaneling an anonymous jury.

### C. The defendants past attempts to interfere with the judicial process.

Five of the defendants have been charged with obstruction-related counts. Two of the defendants, Shanicqua Coleman and Ashley Ross, have been indicted for multiple counts of obstruction of justice and making false declarations as a result of providing false testimony to a federal grand jury. First Superseding Indictment, ECF No. 207. Defendant Phillip Miles and Ashley Ross are charged with witness tampering and obstruction of justice relating to statements they made to a witness. *Id.* Defendant Ashley Ross is charged with obstruction of justice for destroying evidence in a pending criminal investigations. *Id*. Finally, defendant Kevin Lamont Trent, Jr., is charged with witness tampering for intimidating or threatening a witness during the course of a federal investigation. *Id*.

A grand jury has found probable cause that members of the Rollin 60s were actively involved in lying to the grand jury, intimidating or threatening witnesses, and of destroying evidence. Though most of the defendants are in custody, all are not. Further, the Rollin 60s is part of the Crips, a much larger organization, whose members are capable of interfering with the judicial process. *See, e.g., Dinkins*, 691 F.3d at 373-78 (anonymous jury properly empaneled where both capital defendants were members of a gang whose compatriots "had the capacity to

9

harm jurors" and "remained capable of interfering in the judicial process").

As a result of the foregoing, the third *Ross* factor also weighs in favor of empaneling an anonymous jury.

### D. The potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties.

If convicted, six defendants (Marcus Davis, Kevin Trent, Jr., Kanas Trent, Deshaun Trent, Phillip Miles, and Shabba Chandler) face a mandatory penalty of life imprisonment without the possibility of release. Defendant Ashley Ross is facing up to life imprisonment, and two defendants (Shanicqua Colemen and Tenikqua Fuller) are facing up to twenty years' imprisonment. These substantial sentences support a conclusion that the defendants have a significant incentive to engage in conduct that would affect the trial. *See United States v. DeLuca*, 137 F.3d 24, 32 (1st Cir. 1998) (defendants "were confronting mandatory lifetime sentences upon conviction, which surely provided a strong inducement to resort to extreme measures in any effort to influence the outcome of their trial").

As a result, the fourth *Ross* factor weighs in favor of empaneling an anonymous jury.

### E. Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

As the Court is aware, the investigation and prosecution of this case has resulted in considerable and repeated media attention, primarily in the Danville area. The media coverage began with arrest of several defendants on June 14, 2018, and has continued ever since. There have been numerous articles appearing in Danville's primary newspaper, the *Danville Register and Bee*, which has covered each status hearing and most of the six guilty plea hearings held to date. Equally significant, the newspaper published an editorial on March 15, 2019, in which they

10

opined the importance of this case to the Danville community and the desire to see more of the hearings conducted at the United States Courthouse in Danville rather than courts in other divisions of the Western District.[4] In addition to the *Danville Register and Bee*, other media outlets have likewise reported on the case. *See U.S. News and World Report*,[5] WSLS,[6] and WSET,[7] Therefore, it naturally follows that there will be extensive publicity surrounding the trial of these defendants. Such publicity will enhance the possibility that the names of the jurors will become public and, in turn, could expose the jurors to the possibility of intimidation and harassment.

As a result, the fifth *Ross* factor weighs significantly in favor of empaneling an anonymous jury.

## IV. UNITTED STATES PROPOSAL REGARDING THE DISCLSORE OF CERTAIN BIOGRAPHICAL INFORMATION

The facts as set forth above establish that the jury needs protection from interference and harm in this case. The fair and due administration of justice in the trial of this matter would best be served by not disclosing the names, and home and work addresses of prospective and empaneled jurors, or those of their spouses. The United States thus proposes that jurors be assigned a number and be referred to only by that number (in lieu of their names) at all times,

---

[4] https://www.godanriver.com/opinion/editorials/justice-for-and-in-our-community/article_c227cd18-4690-11e9-aded-87ec3b247451.html

[5] https://www.usnews.com/news/best-states/virginia/articles/2018-06-14/gang-members-indicted-on-racketeering-charges-in-virginia

[6] https://www.wsls.com/news/virginia/southside/officials-announce-arrest-of-18-suspected-gang-members-in-danville

[7] https://wset.com/news/local/court-documents-9-danville-gang-members-facing-the-death-penalty

11

including on any jury questionnaire that any prospective jurors may be required to complete. The United States also proposes that the only information that should be divulged regarding the jurors' home or work addresses should be a reference to the city/county. For example, a juror from downtown Charlottesville would be instructed to respond to questions about his or her residence as "Charlottesville City." In this manner, the attorneys and defendants will have enough information to determine if a particular juror is suitable to serve, without the juror's exact address. All other standard biographical information would still be disclosed.

## V.     CONCLUSION

Because all of the *Dinkins* and *Ross* factors favor the use of an anonymous jury in this case, and because the Court can take reasonable steps to ensure that the defendants receive a fair trial by an impartial jury, the United States respectfully requests the Court to empanel an anonymous jury using the parameters suggested herein.

Respectfully submitted,

THOMAS T. CULLEN
UNITED STATES ATTORNEY

*/s/ Ronald M Huber*_____
Ronald M. Huber
Heather L. Carlton
Assistant United States Attorneys

Michael J. Newman
Special Assistant United States Attorney

255 West Main Street, Room 130
Charlottesville, Virginia 22902
Tel:   434-293-4283
ron.huber@usdoj.gov
Heather.Carlton@usdoj.gov
newmamj@danvilleva.gov

12

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2019, I caused a copy of the foregoing to be served by ECF, which provides services on all counsel of record.

/S_____
Ronald M. Huber (VA Bar #31135)
Assistant United States Attorneys

13

Case 4:18-cr-00011-MFU-RSB   Document 385   Filed 03/29/19   Page 13 of 13   Pageid#: 1372