CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 3 2019

JULIA C. DUDLEY, CLERK
BY: /s/ C. Steele
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No.: 4:18-cr-00011 |
| v. ) | |
| ) | |
| MARCUS JAY DAVIS, et al., ) | |
| ) | By: Michael F. Urbanski |
| Defendants. ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on a number of motions by defendants to dismiss and/or merge certain counts of the First Superseding Indictment. ECF No. 207. These motions require the court to tread down the thorny path of the categorical approach, again addressed by the Supreme Court of the United States as recently as June 24, 2019 in United States v. Davis, No. 18-431 (June 24, 2019).

I.

This multi-defendant, multi-count RICO prosecution began on June 11, 2018 when a federal grand jury issued two indictments bringing charges against members of the Rollin 60s Crips street gang, the Milla Bloods street gang, and gang associates on violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962, Violent Crimes in Aid of Racketeering ("VICAR") statute, 18 U.S.C. § 1959, and several other factually related charges. ECF No. 1; ECF No. 207. These cases are captioned United States v. Davis et al., 4:18-cr-11 (bringing charges against members of the Rollin 60s Crips and associates) and United States v. Anthony et al., 4:18-cr-12 (bringing charges against members of the Milla

Bloods street gang and associates).[1] The United States alleges that, in the summer of 2016, members of the Rollin 60s and Milla Bloods collaborated to facilitate criminal activities in the Danville, Virginia area. See ECF No. 207 (describing alleged racketeering conspiracy). This collaboration resulted in (1) the attempted murders of the "Philly Boys" at North Hills Court on June 15, 2016, resulting in the assault and attempted murder of Armonti Womack and Dwight Harris; (2) the attempted murder of Justion Wilson and murder of Christopher Motley at North Hills Court on August 20, 2016; and (3) the attempted Murder of Tyliek Conway on August 24, 2016.

Since the return of the First Superseding Indictment, four of the original twelve defendants have entered guilty pleas (Matthew Ferguson, ECF No. 226; Jaquan Trent, ECF No. 369; Laquante Tarvares Adams, ECF No. 378; and Shanicqua Coleman, ECF No. 435). The remaining defendants have filed a series of motions to dismiss, challenging counts alleging violation of 18 U.S.C. §§ 924(c), 924(j), and 1959. The government has responded, argument was held in June 8, 2019, and the issue is ripe for consideration.

## II.

As an overview, the indictment in this gang case charges in Count 1 a RICO conspiracy and in Counts 2 through 19 various violent crimes associated with three shootings in Danville, Virginia in the summer of 2016.[2] As to each shooting, three categories of federal crimes are alleged:

---

[1] While the charges associated with the alleged RICO conspiracy have been brought in two cases, one for each implicated street gang, all docket numbers used in citations here are in reference to motions and memorandums filed in Davis, 4:18-cr-11.

[2] In Counts 20 through 40, the First Superseding Indictment also charges a number of crimes ancillary to the RICO and VICAR charges, including accessory after the fact, obstruction of justice, false declarations before grand jury, and witness tampering. These counts are not at issue in the pending motions.

2

1. VICAR Murder or Attempted Murder (Counts 2, 6, 10, 12 and 16);

2. VICAR Assault with a Dangerous Weapon (Counts 4, 8, 14, 18); and

3. Use of a Firearm During a VICAR crime, Murder, Attempted Murder, and Assault with a Dangerous Weapon (Counts 3, 5, 7, 9, 11, 13, 15, 17 and 19).

### A.

On May 31, 2019, the government filed a Motion to Dismiss Counts 5, 9, 15, and 19 without prejudice. ECF No. 490. Counts 5, 9, 15, and 19 charge Use of a Firearm During VICAR Assault with a Dangerous Weapon. The government's motion is **GRANTED** and Counts 5, 9, 15, and 19 are **DISMISSED**.

### B.

There are two principal issues surrounding the remaining motions to dismiss: (1) whether counts charging violations of 18 U.S.C. § 924(c) predicated on murder or attempted murder should be dismissed because "murder," as defined by Virginia Code § 18.2-32, categorically speaking, criminalizes conduct that is broader than that covered by 18 U.S.C. § 924(c)(3)(A); and (2) whether the VICAR assault with a dangerous weapon counts must be dismissed because the underlying Virginia brandishing statute, Va. Code § 18.2-282, sweeps too broadly to serve as a VICAR predicate.

## III.

The court first examines 18 U.S.C. § 924(c), as predicated on Va. Code 18.2-32.

### A.

18 U.S.C. § 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of

3

such crime, possesses a firearm" shall be sentenced to a five-year minimum term of imprisonment "in addition to the punishment provided for such crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(3)(A). The statute defines a crime of violence as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or
>
> (B) that by its nature, involves such a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Each of the above clauses provides a different basis for determining whether a crime is a crime of violence. Section 924(c)(3)(A) has been variously referred to as the "force clause," "use-of-force clause," or "elements clause."[3] Section 924(c)(3)(B) is known as the "residual clause."

The elements clause requires courts to use the categorical approach to determine "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of force." United States v. Simms, 914 F.3d 229, 233 (4th Cir. 2019). In conducting this analysis, the court must "focus on the minimum conduct required to sustain a conviction for the state crime." United States v. Doctor, 842 F.3d 306, 308 (4th Cir. 2016). Thus, if the minimum conduct necessary for a violation of the statute does not constitute a crime of violence, then the statute categorically fails to qualify as a crime of violence. United States v. Gardner, 823 F.3d 793, 803 (4th Cir. 2016) (quoting Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015)).

---

[3] Most recently, the Supreme Court in Davis referred to § 924(c)(1)(A) as the "elements" clause, and this opinion follows suit.

4

In Simms, the Fourth Circuit declared the residual clause of § 924(c)(3)(B) unconstitutionally vague, as other residual clauses with almost identical language in a variety of other statutes had likewise been declared, because it required courts ask whether the "ordinary case" of the offense posed the requisite "substantial risk that physical force against the person or property may be used" without providing any guidance on how to determine the crime's ordinary case. 914 F.3d at 236–37. The Supreme Court's recent opinion in Davis closes the door on the viability of § 924(c)'s residual clause.

Following Simms and Davis, the criminal conduct at hand must be analyzed under the elements clause of § 924(c)(3)(A) to determine if it constitutes a crime of violence. Considered generically,[4] if the elements of the underlying offense do not require the use, attempted use, or threatened use of physical force under the elements clause of § 924(c)(3)(A), there can be no separate conviction under § 924(c)(1)(A) for using, carrying, brandishing, or discharging a firearm during or in relation to the underlying offense.

**B.**

To determine if VICAR murder and VICAR attempted murder are crimes of violence under § 924(c)(3)(A), courts have taken different analytical approaches. Some courts assess whether the VICAR predicate offenses, here murder and attempted murder, constitute crimes of violence by using a generic, federal definition of the crime. See United States v. Jones, No. 7:16-cr-30026, 2017 WL 3725636, at *5 (W.D. Va. 2017), and Cousins v. United States, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016) (both looking to a federal generic definition of an offense

---

[4] As the Supreme Court noted recently in Davis, "everyone agrees that, in connection with the elements clause, the term 'offense' carries the first, 'generic' meaning." Davis, slip op. at 10.

5

to determine if it is a viable VICAR predicate). The Fourth Circuit has held that generic, federal murder is a crime of violence for § 924(c)(3)(A) purposes. In re Irby, 858 F.3d 231, 237 (4th Cir. 2017) ("Common sense dictates that murder is categorically a crime of violence under the force clause. . . . It is absurd to believe that Congress would have intended poisoners and people who use their wits to place someone in the path of an inevitable force to avoid the force clause of § 924(c)."). As such, under this analytical approach, VICAR murder and VICAR attempted murder are crimes of violence under the elements clause of § 924(c)(3)(A).

Other courts have looked beyond the generic definition of the enumerated VICAR offense to the elements of the crime, state or federal, underlying the VICAR charge. Here, those crimes are Virginia murder and attempted murder, as defined in Va. Code §§ 18.2-32 and 18.2-26. Defendants advocate this approach, arguing that at least one method of murder proscribed by the Virginia statute, murder by starving, does not require the use of force.

First degree murder in Virginia is "murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary, or abduction." Va. Code § 18.2-32. "In the context of attempted murder, the evidence must show 'specific intent to kill the victim,'" along with an overt act that falls short of the completion of the killing. Secret v. Commonwealth, 296 Va. 204, 225, 819 S.E.2d 234, 248 (2018) (quoting Commonwealth v. Herring, 288 Va. 59, 77, 758 S.E.2d 225, 235 (2014)). The overt act "need not . . . be the last proximate act to the consummation of the [murder], but is sufficient if it be an act apparently adopted to produce

the result intended." Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 214 (1978).

## C.

The Virginia murder statute, Va. Code § 18.2-32, is an "indivisible" statute, meaning that that it "enumerates various factual means of committing a single element." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). The Virginia Model Jury Instructions teach that there are three elements required to prove first degree murder:

(1) That the defendant killed (name of person): and

(2) That the killing was malicious; and

(3) That the killing [was willful, deliberate and premeditated; occurred by poison; occurred by lying in wait; occurred by imprisonment; occurred by starving].

1 Virginia Model Jury Instructions – Criminal; Instruction No. 33.200(a).

Because the Virginia murder statute § 18.2-32 is not divisible, the categorical approach must be used to evaluate whether the minimum conduct necessary for a violation constitutes a § 924(c)(3)(A) crime of violence. This approach requires a court to look to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force. This approach is termed categorical because it requires a court to consider only the crime as defined, not the particular facts of the case. As the Fourth Circuit stated in Simms, "[w]e will refer to the force clause inquiry as the *elements-based* categorical approach, because it begins and ends with the offense's elements. When a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." 914 F. 3d at 233.

Defendants argue that, because the Virginia statute defining murder lists starving as one means of accomplishing it, Virginia murder is not categorically a crime of violence. See, e.g., ECF No. 342, at 6. Defendants posit that a person could conceivably commit murder by starving an infant or a bedridden invalid without using any force, terming murder by starving to be a matter of inaction, rather than action. As such, they argue, neither Virginia murder nor or attempted murder can support a conviction under the elements clause of § 924(c)(3)(A).

The government in its response argues that murder and attempted murder as defined by Virginia law can support a conviction under § 924(c)(3)(A) and finds arguments to the contrary "absurd," given the Supreme Court's holding in United States v. Castleman, 572 U.S. 157 (2014). ECF No. 492, at 9. In Castleman, the Supreme Court examined respondent's motion to dismiss his indictment under 18 U.S.C. § 922(g)(9), which forbids the possession of firearms by anyone convicted of a "misdemeanor crime of domestic violence." Respondent argued that his previous conviction for "intentionally or knowingly caus[ing] bodily injury to" the mother of his child did not qualify as a "misdemeanor crime of domestic violence" because it did not involve "the use or attempted use of physical force."

The Supreme Court disagreed, citing two reasons. First, it held that a "bodily injury" must result from "physical force."

> [A]s we explained in Johnson [v. United States, 559 U.S. 133, 138 (2010)], "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual or emotional force." And the common-law concept of "force" encompasses even its indirect application. . . . It is impossible to cause bodily injury without applying force in the common-law sense.

572 U.S. at 170.

Second, the Court focused on mens rea, concluding that "the knowing or intentional application of force is a 'use' of force." Id. Rejecting the argument that use of poison does not involve force, the Court reasoned that "[t]he 'use of force' in Castleman's example is not the act of 'sprinkl[ing]' the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." Id. at 171.

The Fourth Circuit recently had occasion to examine the reach of Castleman in United States v. Battle, 927 F.3d 160, 166-67 (2019), where it held:

> In sum, Castleman teaches us that the requisite mens rea is crucial in the force analysis. "[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force." Castleman, 572 U.S. at 169. Again, Castleman held that the use of physical force was an element of his conviction because "[i]t is impossible to cause bodily injury without applying force." Id. at 170. Here AWIM [ Maryland Assault with Intent to Murder] requires the specific intent to bring about the death of the assault victim. Following Castleman, it is impossible to intend to cause injury or death without physical force as contemplated under the ACCA.[5]

The holding in Castleman, especially concerning the mens rea element, compels the conclusion that murder and attempted murder in Virginia are crimes of violence.

**D.**

Consistently, and regardless of the analytical approach employed, five different federal judges in Virginia have rejected the arguments raised by defendants that Virginia murder is not a crime of violence under the force clause of § 924(c)(3)(A).

---

[5] The ACCA (Armed Career Criminal Act) includes both an elements and residual clause with much the same language as § 924(c)(3). The ACCA's residual clause was declared unconstitutional in Johnson v. United States,135 S. Ct. 2551 (2015), and thus a violent crime to support an enhanced sentence under the ACCA requires the same analysis as outlined under § 924(c). See United States v. Winston, 850 F.3d 677, 683 (4th Cir. 2017).

9

First, in a RICO gang case tried in this district, Judge Glen E. Conrad dismissed the argument made by defendants herein. As Judge Conrad explained, "applying the Supreme Court's reasoning in Castleman, the court has no difficulty concluding that murder, even if by poison or starvation, requires the use of physical force against the victim such that it qualifies as a crime of violence under § 924(c)(3)(A)." United States v. Mathis, No. 3:14cr00016, 2016 WL 8285758 (W.D. Va. Jan. 25, 2016).

Considering the common law definition of murder, Judge Rebecca Beach Smith of the Eastern District of Virginia concluded in Cousins v. United States, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016), that "[t]he intentional killing of another certainly involves 'the use, attempted use, or threatened use of physical force against the person,' and thus, Murder in Aid of Racketeering Activity qualifies as a crime of violence under the force clause in § 924(c)(3)(A)."

In United States v. Cuong Gia Le, 206 F. Supp. 3d 1134 (E.D. Va. 2016), Judge T.S. Ellis, III, expressly considering the argument that the Virginia murder statute, Va. Code § 18.2-32, includes murder by "poison" and "starving," nonetheless concluded that "murder, as defined by Va. Code § 18.2-32, constitutes a crime of violence pursuant to the force clause of § 924(c)." Id. at 1148.

Defendants in United States v. Simmons, No. 2:16-cr-130, 2018 WL 6012368 (E.D. Va. Nov. 16, 2018), filed post-trial motions to set aside their § 924(c) convictions, arguing, inter alia, that their VICAR murder and VICAR attempted murder convictions were not crimes of violence under the force clause of § 924(c)(3)(A). Id. at *1. Judge Mark S. Davis of the Eastern District of Virginia "concluded with little analysis needed that 'generic' murder

10

constitutes a 'crime of violence' under the § 924(c)(3)(A) force clause." Id. at *2. Summarizing his prior oral rulings, Judge Davis stated:

> The Court then considered murder as punished under the cross-referenced Virginia statute, noting that the Court interpreted the law as requiring it to consider the elements of such state law crime in order to ensure that the federal VICAR murder offenses at issue are proper predicate <u>violent</u> crimes that could support a conviction under § 924(c) (3) (A). Umana, 229 F. Supp. 3d at 395. In analyzing Virginia's murder statute, Va. Code § 18.2-32, this Court concluded that all violations of such statute require <u>the use, attempted use, or threatened use of physical force against another</u>, thereby concluding that a violation of Va. Code § 18.2-32 satisfies the violent force requirement of § 924(c)(3)(A).
>
> To the extent that the Court failed to clearly state on the record that its analysis of Virginia law leads to the conclusion that VICAR murder, as cross-referenced to Virginia law, is itself a "crime of violence" under § 924 (c)(3)(A), the Court expressly makes such finding now. Stated differently, in concluding that all violations of § 18.2-32 require a malicious killing, committed through the application of violent force, the Court finds that the elements of Virginia murder are consistent with the elements of "generic" murder, to include first degree murder by starvation, and second degree murder committed with the degree of "malice" necessary to distinguish murder from manslaughter under Virginia law. Essex v. Com., 228 Va. 273, 280–81, 322 S.E.2d 216, 219-20 (1984); see Umana, 229 F. Supp. 3d at 394–97. Such finding leads to the conclusion that each federal VICAR murder conviction in this case is itself a "crime of violence" under the force clause set forth in § 924(c) (3) (A).
>
> For the same reasons, the federal VICAR <u>attempted</u> murder counts for which a guilty verdict was returned in this case are "crimes of violence" under the force clause set forth in § 924(c)(3)(A) (requiring the predicate crime to have, "as an element the use, <u>attempted use</u>, or threatened use of physical force against the person or property of another"). Accordingly, the Court reaffirms its oral **DENIALS** of Defendants' challenges to all of the § 924(c) convictions in this case for which the jury found that the firearm used in furtherance of murder or attempted murder, which applies to all § 924(c) convictions other than Count 30.

Id. at *2–3.

11

As recently as this past January, Judge Leonie M. Brinkema of the Eastern District of Virginia declined to vacate a § 924(c) conviction, holding that "the predicate crime—aiding and abetting an attempted murder—qualifies as a crime of violence under the force clause, § 924(c)(3)(A)." Portocarrero v. United States, No. 1:10-cr-00066-1(LMB), 2019 WL 181119, at *7 (E.D. Va. Jan. 11, 2019). Judge Brinkema reasoned:

> The crime of murder requires, as an element, that a violator of the statute use force, attempt to use force, or threaten to use force. The Fourth Circuit has held that one cannot commit federal murder "without a use of physical force capable of causing physical pain or injury to another." In re Irby, 858 F.3d 231, 238 (4th Cir. 2017). In addition, murder as defined by Virginia Code § 18.2-32 has been found to constitute a crime of violence pursuant to the force clause of § 924(c). See United States v. Cuong Gia Le, 206 F. Supp. 3d 1134, 1148 (E.D. Va. 2016) (discussing how "it does not matter ... that the harm occurs indirectly, rather than directly" (citing United States v. Castleman, 572 U.S. 157, 171 (2014))). Therefore, murder, whether defined under federal law or Virginia law, has as an element the use, attempted use, or threat of use of force. See United States v. Simmons, No. 2:16cr130, 2018 WL 6012368, at *2 (E.D. Va. Nov. 16, 2018) ("To the extent that the Court failed to state on the record that its analysis of Virginia law leads to the conclusion that VICAR [Violent Crimes in Aid of Racketeering] murder, as cross-referenced to Virginia law, is itself a 'crime of violence' under § 924(c)(3)(A), the Court expressly makes such finding [sic] now."). This conclusion, that the killing of another necessarily involves violence, should be uncontroversial.

Id.

Defendants have not cited, and the court has not located, any cases holding that the crime of murder or attempted murder under Virginia law falls outside the force clause of § 924(c)(3)(A). Consistent with the reasoning of the federal courts in Virginia in Mathis, Cousins, Cuong Gia Le, Simmons, and Portocarrero, the court rejects the argument raised by

12

defendants that murder, whether defined generically or as set forth in Va. Code § 18.2-32, is not a crime of violence for the purposes of § 924(c)(3)(A). These decisions are bolstered by the Fourth Circuit's focus in Battle on the crucial role mens rea plays in the force analysis as articulated in Castleman. Battle, 927 F.3d at 166-167. Again, "[f]ollowing Castleman, it is impossible to intend to cause death without physical force." Id. at 167.

Defendants' motions to dismiss the § 924(c) counts based on Virginia murder and attempted murder for failing to state an offense are **DENIED**.

## IV.

The second issue to be addressed is whether the Virginia brandishing statute may serve as a VICAR predicate. Section 1959 makes it a crime for any person, as a member of a RICO enterprise engaged in racketeering activity, to commit a proscribed act of violence in order to maintain or increase his position in the enterprise. 18 U.S.C. § 1959(a). In order to establish a VICAR violation, "the government must prove that: (1) there was a RICO enterprise; (2) it was engaged in racketeering activity as defined in RICO; (3) the defendant in question had a position in the enterprise; (4) the defendant committed the alleged crime of violence; and (5) his general purpose in so doing was to maintain or increase his position in the enterprise." United States v. Zelaya, 908 F.3d 920, 926-27 (4th Cir. 2018) (citing United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994)). The fourth element is the key conduct element in determining if the VICAR offense has as an element the use, attempted use, or threatened use of physical force.

At issue in the pending motions are the VICAR assault with a dangerous weapon charges. As noted, the indictment charges that the VICAR assault with a dangerous weapon

were committed in violation of Va. Code § 18.2-282, Virginia's misdemeanor brandishing statute. The indictment does not cross reference Virginia's malicious wounding, use or display of a firearm in committing a felony, or assault statutes. See Va. Code §§ 18.2-51, 18.2-53.1, and 18.2-57. In such a situation, the court must "compare the elements of the statute forming the basis of the defendant's [charge or] conviction with the elements of the "generic" crime, i.e., the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013). "If the generic crime is a 'crime of violence,' [the cross-referenced state statute] will also qualify as a 'crime of violence' if the statute's elements are substantially the same or narrower than those in the generic crime." Umana v. United States, 229 F. Supp. 3d 388, 392 (W.D. N.C. 2017). "If the state statute is broader, and is applied to capture non-violent conduct, the [charge] in question cannot serve as the predicate [VICAR] 'crime of violence' regardless of whether the defendant's actual conduct violates the generic form of the offense.' Simmons, 2018 WL 6012368, at *10.

"At common law, 'assault' had two meanings, one being criminal assault, which is an attempt to commit a battery, and the other being tortious assault, which is an act that puts another in reasonable apprehension of immediate bodily harm." United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982). "[A]n assault is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." United States v. Dupree, 544 F.2d 1050, 1051 (9th Cir. 1976). The most analogous federal statute is 18 U.S.C. § 113, prohibiting assaults within maritime or territorial jurisdiction. An "assault" within the meaning of § 113 "is any intentional

14

and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm," United States v. LeCompte, 108 F.3d 948, 952 (8th Cir. 1997), as well as any attempt to intentionally use unlawful force against another person, regardless of whether the victim "experienced reasonable apprehension of immediate bodily harm." Guilbert, 692 F.2d at 1343.

The government argues that the VICAR predicate referenced in Counts 4, 8, 14 and 18, Va. Code § 18.2-282, substantially tracks the common law definition of assault with a dangerous weapon. Defendants disagree, arguing that the referenced Virginia misdemeanor brandishing statute prohibits conduct beyond that encompassed within the generic definition of assault with a deadly weapon.

Virginia law supports defendants' argument, particularly as regards the mens rea requirement. The Virginia Supreme Court has held that the Virginia brandishing statute has two elements: "(1) pointing or brandishing a firearm, and (2) doing so in a manner as to reasonably induce fear in the mind of the victim." Kelsoe v. Commonwealth, 226 Va. 197, 198, 308 S.E.2d 104 (1983). "'Brandish' means 'to exhibit or expose in an ostentatious, shameless, or aggressive manner.'" Morris v. Commonwealth, 269 Va. 127, 135, 607 S.E.2d 110, 114 (2005) (quoting Webster's Third New International Dictionary, 268 (1993)).

In Huffman v. Commonwealth, 51 Va. App. 469, 658 S.E.2d 713 (Va. App. 2008), defendant was convicted of brandishing in violation of § 18.2-282 when the victim simply observed the defendant waiving a handgun in the air and then asked the defendant to put it away. Id., 51 Va. App. at 474, 658 S.E.2d at 715. Although defendant had not attempted to or

15

threatened to use force against the victim, his conduct was sufficient to support a conviction under § 18.2-282. Likewise, in Dezfuli v. Commonwealth, 588 Va. App. 1, 10, 707 S.E.2d 1, 6 (Va. App. 2011), the Court of Appeals of Virginia held that § 18.2-282 is not a lesser included offense of "use of a firearm in the commission of a felony" in violation of Virginia Code § 18.2-53.1 because in showing the latter, "the Commonwealth must prove that the defendant used or threateningly displayed the firearm expressly to assist him in attempting or completing a specified underlying criminal act," but the former requires proving only that the defendant "'pointed, held or brandished' a firearm in a manner that reasonably induced fear in the mind of some nearby person." 58 Va. App at 10, 707 S.E.2d at 6. The government need not "prove the defendant displayed his firearm 'in a threatening manner' to obtain a conviction for brandishing a firearm under Code § 18.2-282." Id., 58 Va. App. at 11, 658 S.E.2d at 6.

Because the Virginia brandishing statute makes it unlawful to engage in a display of a firearm in a manner so as to reasonably induce fear in another, and does not require proof of an intent to threaten or cause harm to another, it is broader than, and does not correspond in substantial part to, generic assault. As such, Va. Code § 18.2-282 cannot serve as a VICAR predicate.

This conclusion is consistent with the reasoning of the Eastern District of Virginia in Simmons, where the court stated that "[i]n this Court's view, Va. Code § 18.2-282, a misdemeanor brandishing crime, appears broader than generic assault with a dangerous weapon, and more importantly to the instant case, it does not have the use or threatened use of violent force as an element." 2018 WL 6012368, at *9. The court rejected the argument made by the government here that the elements of Va. Code § 18.2-282 "correspond in

16

substantial part" to the elements of generic assault with a dangerous weapon, reasoning as follows:

> While this Court agrees that the brandishing "label" on the state law crime is irrelevant, and further agrees that the elements of the state law crime need not perfectly align with the generic elements, the Supreme Court has clarified (in the analogous ACCA context) that, when comparing the elements of a generically listed federal crime and a specific state statute, the key consideration is whether the state statute "sweeps more broadly than the generic crime." Descamps, 570 U.S. at 260-61. If the state statute is broader, and is applied to capture non-violent conduct, the conviction in question cannot serve as the predicate § 924(c) "crime of violence" regardless of whether the defendant's actual conduct violates the generic form of the offense.
>
> Here, the Court finds that Va. Code § 18.2-282 sweeps more broadly than generic assault with a dangerous weapon because the most innocent conduct that <u>has actually been prosecuted</u> under Va. Code § 18.2-282 does not involve the use of violent force or <u>the threat</u> to use violent force, as the firearm does not need to be displayed with either the intent to harm <u>or the intent to scare another person</u>, but rather, can be waived in the air in a manner that is reasonably <u>perceived</u> as being dangerous.

Id. at *10.[6]

Accordingly, defendants' motion to dismiss VICAR counts predicated upon Va. Code § 18.2-282 is **GRANTED**, and Counts 4, 8, 14, and 18 of the Superseding Indictment are **DISMISSED**.

---

[6] While the 2004 decision of the Eastern District of Virginia in United States v. Cuong Gia Le, 316 F. Supp. 2d 355 (E.D. Va. 2004), reached a contrary result regarding the Virginia brandishing statute, that case was decided before the decisions of the Virginia Court of Appeals in Dezfuli and Huffman. Moreover, while the mode of analysis employed herein differs somewhat from that of the court's earlier opinion in United States v. Jones, No. 7:16-cr-30026, 2017 WL 3725632 (Aug. 29, 2017), the analytical approach of focusing on the elements of the underlying state statute employed herein would not change the result in Jones as the underlying state law violation was for malicious wounding in violation of Va. Code § 18.2-51, plainly a crime of violence. See United States v. Jenkins, 719 Fed. Appx. 241 (4th Cir. 2018).

## V.

For these reasons, the government's motion to dismiss Counts 5, 9, 15, and 19 without prejudice, ECF No. 490, is **GRANTED**. ECF Nos. 457, 460, and 461 are **DENIED as moot**.

Defendants' motions to dismiss § 924(c) counts based upon Virginia murder and attempted murder, ECF Nos. 342, 349, 351, 355, 356, 358, 361, and 362, are **DENIED**. As such, the motions to dismiss Counts 3, 7, 11, 13, and 17 are **DENIED**.

Defendants' motions to dismiss counts alleging VICAR assault with a dangerous weapon, predicated on the Virginia brandishing statute, ECF Nos. 355, 358, and 363, are **GRANTED**. Counts 4, 8, 14, and 18 are **DISMISSED**.

An appropriate Order will be entered.

Entered: 07-22-2019

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge